**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JOHN DOE,**

                              **Plaintiff,**

                v.                                  1:18-CV-1374
                                                                       (FJS/CFH)

**RENSSELAER POLYTECHNIC INSTITUTE;**
**LARRY HARDY, Title IX Coordinator for**
**Rensselaer Polytechnic Institute; ELIZABETH**
**MARY BROWN-GOYETTE, Title IX**
**Investigator; and LESLIE NORTON, Public**
**Safety Lieutenant and Title IX Investigator,**

                              **Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **E. STEWART JONES HACKER MURPHY, LLP**<br>28 Second Street<br>Troy, New York 12180<br>*Attorneys for Plaintiff* | JAMES C. KNOX, ESQ.<br>JULIE A. NOCIOLO, ESQ. |
| **PATTISON, SAMPSON, GINSBERG & GRIFFIN, PLLC**<br>22 First Street<br>P.O. Box 208<br>Troy, New York 12181<br>*Attorneys for Defendants* | MICHAEL E. GINSBERG, ESQ. |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Plaintiff's motion for a preliminary injunction. *See* Dkt. No. 5.[1]

---

[1] Plaintiff also sought a temporary restraining order, which the Court granted pending the
(continued...)

The Court heard oral argument in support of and in opposition to this motion on December 18, 2018, at the end of which the Court denied the motion and advised counsel that the Court would issue a written decision setting forth its reasons for the denial. The following is the Court's written determination of the motion.

## II. BACKGROUND

In his complaint, Plaintiff asserts the following eleven causes of action: (1) violation of Title IX of the Education Amendments of 1972 as applied to him; (2) facial violation of Title IX of the Education Amendments of 1972 because Defendant Rensselaer Polytechnic Institute's ("RPI") Student Misconduct Policy has a disparate impact on male students based on their sex; (3) violation of the United States Department of Education Office of Civil Rights ("OCR") Title IX rules; (4) violation of Title IX because Defendants reached an erroneous outcome in the adjudication of their Title IX action against him; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; (7) unfair or deceptive trade practices in violation of § 349 of New York's General Business Law; (8) estoppel and reliance; (9) intentional infliction of emotional distress; (10) negligence; and (11) a declaration, pursuant to 28 U.S.C. § 2201, that (a) the outcome and findings that Defendants made following Plaintiff's Title IX hearing and appeal be reversed; (b) Plaintiff's disciplinary record be expunged; (c) the record of his suspension from RPI be removed from his record, educational file, and/or any other document relating to Plaintiff's time at RPI; (d) any

---

¹(...continued)
hearing on the motion for a preliminary injunction. Originally, the Court scheduled the hearing on the motion for a preliminary injunction for December 5, 2018; but, after the Court rescheduled the hearing for December 18, 2018, the parties stipulated to an extension of the temporary restraining order through the new hearing date. *See* Dkt. No. 9.

record(s) of his hearing and/or appeal be permanently destroyed; and (e) RPI's rules, regulations and guidelines are unconstitutional as applied. *See generally* Dkt. No. 1, Complaint.

As a result of Defendants' alleged actions, Plaintiff seeks (1) an award of damages under Title IX, § 349(a) of New York General Business Law and state common law, including, but not limited to, damages to physical well-being, emotional, mental, and psychological health, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects; (2) attorney's fees, costs and expenses; (3) prejudgment and post-judgment interest; (4) an order staying all Title IX proceedings against Plaintiff until the United States Department of Education's Title IX regulations become effective and an order that Defendants remove any sanctions arising from the student conduct proceeding underlying this case, including a declaration that (a) Defendants' rules, regulations, guidelines, and policies violated Plaintiff's due process rights as applied and (b) Defendants' rules, regulations, guidelines, and policies facially violated Title IX. *See id.* at Wherefore Clause.

### III. DISCUSSION[2]

#### A. Preliminary injunction standard

"'[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter.'" *Doe v. Quinnipiac Univ.*, No. 3:17CV364 (JBA), 2017 WL 1206002, *4 (D. Conn. Mar. 31, 2017) (quoting *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990)).

---

[2] As the Court noted at oral argument, Plaintiff's counsel did not comply with Local Rule 7.1(a) in that they did not file a memorandum of law in support of Plaintiff's motion and their declaration was replete with legal arguments. The Court reiterates its warning to counsel that any further non-compliance with the Local Rules shall result in the imposition of the appropriate sanctions.

-3-

Generally, a plaintiff who seeks a preliminary injunction must demonstrate the following:

> (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved by the issuance of an injunction."

*Id.* (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).

"'Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision in the merits can be rendered.'" *Id.* (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948, at 431 (1983))). The Second Circuit has defined irreparable harm "as certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co., LLC v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003) (citations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (stating that "[i]rreparable harm is an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation'" (quoting *Jackson Dairy*, 596 F.2d at 72)).

Furthermore, "[a] plaintiff must connect future harm to the absence of an injunction (i.e., show that he or she will be irreparably harmed if the Court does not grant the requested preliminary injunction)." *Quinnipiac Univ.*, 2017 WL 1206002, at *5 (citing *Salinger*, 607 F.3d at 79-80; *Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*, No. 07CV1562(ERK)(RML), 2008 WL 207843, at *6 (E.D.N.Y. Jan. 24, 2008), *order aff'd and remanded sub nom. Nat'l Elevator Cab & Door Corp. v.*

*H&B, Inc.*, 282 Fed. Appx. 885 (2d Cir. 2008) ("the injunction must prevent or remedy the harm")). The Second Circuit has also held that a party who seeks a preliminary injunction "must establish more than a mere 'possibility' of irreparable harm. Rather, it must show that irreparable harm is 'likely' to occur." *Id.* (citing *JSG Trading Corp.*, 917 F.2d at 79).

**B.      Plaintiff's motion for a preliminary injunction with regard to his Title IX claims**[3]

Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). It is well-established "'that Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline.'" *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 367 (S.D.N.Y. 2015) (quoting *Yusuf*, 35 F.3d at 715), *judgment vacated by*, 831 F.3d 46 (2d Cir. 2016). Furthermore, Title IX "'is enforceable through an implied private right of action for monetary damages as well as injunctive relief.'" *Id.* (quotation and other citation omitted).

"[T]o establish a claim of discrimination under Title IX, a plaintiff must ultimately show that the defendant discriminated against him . . . *because of* sex; that the discrimination was

---

[3] In support of his motion for a preliminary injunction, Plaintiff limits his discussion to his Title IX claims. Therefore, for purposes of determining whether Plaintiff has met the standard for the granting of a preliminary injunction, the Court will address only those claims.

The Court also notes that there is no personal liability under Title IX. *See Doe v. Nat'l Ramah Comm'n, Inc.*, No. 16-cv-6869 (NSR), 2018 WL 4284324, *8 (S.D.N.Y. Sept. 7, 2018) (noting that "[n]umerous courts within [the Second] Circuit have held that Title IX does not give rise to individual liability" (citations omitted)). Therefore, Plaintiff can only assert his Title IX claims against Defendant RPI.

-5-

intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Id.* (citation omitted). "It is not enough to show that a policy or practice disproportionately affects one sex." *Id.*

In cases such as this one, in which a plaintiff claims that the defendant reached an erroneous outcome because of a flawed proceeding, he is, in effect, asserting that he "was innocent and wrongly found to have committed the offense[.]" *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461-62 (S.D.N.Y. 2015) (citing *Scott v. WorldStarHipHop, Inc.*, No. 10-CV-9538-PKC, 2011 WL 5082410, at *4 (S.D.N.Y. Oct. 25, 2011) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-16 (2d Cir. 1994))). In such a case, the "plaintiff must show that 'gender bias was a motivating factor' behind the erroneous outcome . . . ." *Id.* (quotation omitted).

As a preliminary matter, to the extent that Plaintiff is claiming that Defendant RPI's disciplinary proceedings denied him constitutional due process, this argument has no merit because Defendant RPI is a private college and not a state actor. Therefore, "'the federal Constitution does not establish the level of due process that [Defendant RPI] had to give [Plaintiff] in his disciplinary proceeding.'" *Yu*, 97 F. Supp. 3d at 462 (quoting *Bleiler v. Coll. of Holy Cross*, No. 11-CV-11541-DJC, 2013 WL 4714340, at *4 (D. Mass. Aug. 26, 2013)) (other citation omitted). That does not mean, however, that private colleges, like Defendant RPI, "'may . . . arbitrarily or capriciously dismiss a student.'" *Id.* at 463 (quoting *Bleiler*, 2013 WL 4714340, at *5). Rather, "[t]he Dear Colleague Letter [*i.e.*, the Department of Education Office for Civil Rights' guidance letter] provides that 'prompt and equitable' resolution of sexual violence complaints shall include, among others, the following 'critical' elements: '[n]otice to students . . . of the grievance procedures'; '[a]dequate, reliable, and impartial investigation of complaints [including any hearing], including

-6-

the opportunity for both parties to present witnesses and other evidence'; '[n]otice to parties of the outcome of the complaint. . . .'" *Yu*, 97 F. Supp. 3d at 463 (quoting Dear Colleague Letter at 9, 11).

In his first cause of action, Plaintiff alleges that Defendant RPI violated Title IX as applied to him. *See* Complaint at ¶¶ 60-81. Specifically, Plaintiff asserts that Defendant RPI has "deprived [him], on the basis of his sex, of his rights to due process, fundamental fairness, and equal protection under Title IX through the improper administration and/or the existence in its current state, of [Defendant RPI's] Student Sexual Misconduct Policy and Procedures." *See id.* at ¶ 68. In addition, Plaintiff contends that "Defendants conducted their investigation into the events of February 17, 2017 in a manner that was biased against [him]. Defendants arrived at an erroneous finding of non-consensual sex perpetrated by [him] at odds with the evidence, and the untested credibility of the complainant." *See id.* at ¶ 69. Plaintiff asserts that, in doing so, "defendants have denied to [him] the Title IX rights due to him as . . . [the] accused. In his standing as a student accused of sexual assault, defendants have denied [him] the due process to which he was entitled by unaccountably crediting Ms. Roe's version of events over his own without the benefit of any cross-examination." *See id.* at ¶ 70. Furthermore, Plaintiff claims that Defendant "RPI has created an environment in which an accused male is fundamentally denied the due process guaranteed under Title IX by prosecuting male students under a presumption of guilt. Such a one-sided process has arbitrarily and selectively denied [him], because of his sex, of educational and extracurricular opportunities and benefits at RPI." *See id.* at ¶ 71.[4]

---

[4] This allegation appears inconsistent with Plaintiff's assertion in an earlier paragraph in his complaint that "Defendants did not issue any directives restricting [him] during the pendency of their Title IX investigation. For instance, [d]efendants never (i) issued a No Contact order directing plaintiff to not communicate with Ms. Roe, (ii) issued a Persona Non Grata preventing
(continued...)

Since "the single most important prerequisite for the issuance of a preliminary injunction" is the showing that the plaintiff is likely to suffer irreparable harm in the absence of an injunction, the Court will discuss that requirement first. *Quinnipiac Univ.*, 2017 WL 1206002, at *4 (quotation omitted)

As noted, to date, Defendants have not taken any adverse/disciplinary action against Plaintiff. Although after conducting their investigation the investigators found that it was more likely than not that a violation of Defendant RPI's Student Sexual Misconduct Policy had occurred, Plaintiff, as was his right, disagreed with that finding and requested a hearing. That hearing was scheduled to begin on December 3, 2018. However, before that date, Plaintiff filed this action and moved for a Temporary Restraining Order and a preliminary injunction, requesting, among other things, that the Court enjoin Defendants from holding a hearing until after the proposed Title IX regulations became effective. The Court granted the TRO, which expired after the hearing on December 18, 2018.

Plaintiff asserts that he "has . . . already been damaged by [D]efendants' due process violations." *See* Complaint at ¶ 59. However, in response to the Court's questions, his counsel acknowledged that, to date, Defendants had not taken any adverse/disciplinary actions against Plaintiff. With regard to future harm, Plaintiff asserts that he "stands to suffer imminent further damage due to a forgone conclusion that he will be found in violation of the sexual assault provision of [the] Student Sexual Misconduct Policy and face permanent expulsion from the

---

⁴(...continued)
plaintiff from entering RPI's campus without prior approval, or (iii) temporarily suspended plaintiff." *See* Complaint at ¶ 37. In addition, at oral argument, in response to the Court's question, Plaintiff's counsel acknowledged that Defendants had, to date, **not** taken any adverse/disciplinary action against him.

-8-

institution." *See* Complaint at ¶ 59. However, there is nothing in the record to support Plaintiff's conclusory assertion that the results of the hearing are a "foregone conclusion"; and, as the Court noted at the hearing, Plaintiff is relying on mere conjecture to support this assertion with no evidence to back it up.

In addition, Plaintiff argues that, "[i]f the Hearing Board credits Ms. Roe, [he] will be found to have violated the sexual assault provision of [D]efendant [RPI's] Policy. He will face significant and serious sanctions including expulsion from the institution and a notation on his transcript indicating that he has been found in violation of [Defendant] RPI's Student Sexual Misconduct Policy – impeding him from transferring to another institution, being accepted at a graduate school, or obtaining future employment." *See* Dkt. No. 5-1, Knox-Nociolo Declaration, at ¶ 9. Although expulsion is one of the sanctions that Defendant RPI could impose if it were to conclude that Plaintiff violated its Student Sexual Misconduct Policy, absent a crystal ball, there is no way to know what the outcome of the hearing will be or what, if any, sanctions Defendant RPI will impose on Plaintiff.

Moreover, Plaintiff contends that the harm he "will suffer from [D]efendants' actions and sanctions is no less real, immediate, or irreparable than in *Pennsylvania State University*, *Middlebury College*, and *University of Michigan*." *See id.* at ¶ 28. These three cases, however, are easily distinguishable and do not support Plaintiff's position.

First of all, two of these cases, *Doe v. Penn. State Univ.*, 276 F. Supp. 3d 300 (M.D. Penn. 2017), and *Doe v. Univ. of Mich.*, 2:18-CV-11776-AJT-EAS, Dkt. No. 30 (E.D. Mich. July 6, 2018) (unpublished opinion), involved public universities. The third case, *Doe v. Middlebury Coll.*, No. 1:15-CV-192-jgm, 2015 WL 5488109 (D. Vt. Sept. 16, 2015), involved a private college in which

the plaintiff asserted a breach-of-contract claim, alleging that Middlebury had not followed its own policy when it undertook a second de novo investigation and determination of a sexual assault allegation regarding an event that had occurred while the plaintiff was a participant in a study-abroad program because Middlebury's agreement with the plaintiff prior to his participation in that program was that he would be subject to the policies and discipline of the host institution, which had conducted its own investigation and hearing and exonerated the plaintiff. *See Middlebury Coll.*, 2015 WL 5488109. at *1.

Furthermore, *Middlebury College* and *Penn. State Univ.* are procedurally distinguishable from this case in that, in both of those cases, the disciplinary procedures had been completed and sanctions had been recommended, if not imposed, before the plaintiffs sought a preliminary injunction. Thus, the plaintiffs could point to imminent and concrete injury if the court did not grant them preliminary relief. For example, in *Middlebury College*, after an investigation that resulted in a finding that the plaintiff had violated Middlebury's policy, Middlebury's VP of Student Affairs and Dean of the College issued a sanction expelling the plaintiff and that sanction was upheld on appeal. *See id.*

In support of his motion for a preliminary injunction, the plaintiff argued that, if the court did not grant his motion, "he [would] suffer irreparable harm . . . because he [had] a job offer, to begin in July 2016, contingent on the successful completion of his degree at Middlebury." *Id.* at *3 (citation omitted). "If he were not permitted to begin his senior year in September 2015, he [would] not complete his degree before July 2016 and [he would] lose the job." *Id.* In addition, the plaintiff argued that "another job in this field [would] be difficult to secure because the job offers stem[med] from successful completion of an internship offered to students entering their senior year of

college." *Id.* Furthermore, he contended that money damages could not compensate him "for the loss of his senior year in college with his class, the delay in the completion of his degree, or the opportunity to begin his career in July 2016 with this particular employment." *Id.* (footnote omitted). Finally, the plaintiff claimed that, for the remainder of his professional career, he would have to explain "why his education either ceased prior to completion or contain[ed] a gap." *Id.* (citation omitted).

Unlike the situation in *Middlebury College*, Defendants have not imposed any disciplinary sanction in this case; and Plaintiff has not offered any evidence that would support a finding that he will suffer any imminent concrete harm if the Court does not grant his motion for a preliminary injunction.

Similarly, in *Penn. State Univ.*, prior to the plaintiff commencing his lawsuit and filing a motion for a preliminary injunction, Penn State had completed its administrative process. After reviewing the final investigative report and exhibits, Penn State's Associate Director of Student Conduct notified the plaintiff that, "based on her review of the investigative packet, it was her determination as case manager 'that it [was] reasonable to believe a code of conduct violation ha[d] occurred.'" *Penn. State Univ.*, 276 F. Supp. 3d at 304. She also advised the plaintiff of the charge: "Nonconsensual Penetration: Digital or with an Inanimate Object" and the sanction to be imposed: "Conduct Suspension through FA2017[, and an] Educational Program and/or Counseling required for readmission. . . ." *Id.* at 304-05. The plaintiff refused to accept this charge and the sanctions and filed a written response. *See id.* at 305. Penn State then scheduled a hearing, at the conclusion of which, the Decision Panel found that the plaintiff had violated Penn State's Code of Conduct and imposed the following sanctions: "(1) 'Disciplinary Suspension through FA 2017'; (2) 'Required to

-11-

successfully complete counseling evaluation/assessment under the direction of the Office of Student Conduct'; (3) 'Loss of on-campus privileges'; and (4) 'Recommendation for the loss of participation in the Penn State Jefferson premed/medical program as long as [the complainant] is a participant in this program.'" *Id.* at 306.

After his appeal of the Panel's decision was denied, the plaintiff commenced a lawsuit, in which he alleged that several errors had occurred at the hearing, including the following: (1) he was silenced when he tried to talk about the procedural errors that Penn State had committed, "which had impacted the investigation and adjudication in violation of Penn State's Code of Conduct"; and (2) the hearing panel improperly rejected eighteen of twenty-two . . . questions [he had submitted] as either not relevant or pertaining to new evidence." *Id.* at 305 (footnote omitted).

In addressing the irreparable harm element of the plaintiff's motion for a preliminary injunction, the court found that, "given the broad language of the sanction issued by the Title IX decision panel, the harm [the plaintiff] would suffer absent some preliminary relief [was] real, immediate, and irreparable." *Penn. State Univ.*, 276 F. Supp. 3d at 314. In particular, the court noted that the suspension from the pre-med program for as long as the complainant was a participant in the program could last for another six years and that the plaintiff's "ensuing gap, or delay, in the completion of the program would constitute irreparable harm." *Id.* Furthermore, the court found that, "given the competitive nature of medical school applications and what [the plaintiff] aver[red] [were] the mandatory disclosures required for admission to an alternative medical school, [the plaintiff] would essentially be without means to mitigate this harm by securing acceptance into another medical program, and, if he intend[ed] to proceed with his goal of becoming a doctor, would essentially be forced to await his return to full participation in the

-12-

program." *Id.* Finally, the court stated that, "even if this limitation on acceptance into an alternative medical school did not exist and [the court] were to accept Penn State's assertion that a gap of only two years will result, [the plaintiff] would still be irreparably harmed by the imposition of this sanction . . . because he would forever be forced to explain his lengthy tenure within this program and, ultimately, his delayed entry into the professional workforce." *Id.* at 314-15.

Unlike the situation in *Middlebury College* and *Penn. State Univ.*, in which the plaintiffs had completed the administrative process and were facing immediate sanctions before they filed their cases in federal court and moved for a preliminary injunction, in this case, the administrative process is incomplete; and, to date, Defendant RPI has not imposed any sanctions on Plaintiff. Although Plaintiff alleges that it is a foregone conclusion that a hearing will result in his suspension/expulsion if the hearing takes place before the proposed new Title IX regulations regarding cross-examination become effective, this is mere speculation; and Plaintiff has not offered any facts that would support such a conclusion.

Finally, in *Doe v. Univ. of Michigan*, 2:18-CV-11776-AJT-EAS, Dkt. No. 30 (E.D. Mich. July 6, 2018) (unpublished opinion), the plaintiff, a student who had completed all of the requirements to receive his undergraduate degree at the University, was accused of sexual assault and faced a possible penalty of expulsion. In the middle of the University's investigation into the alleged conduct, the plaintiff commenced a § 1983 action claiming, among other things, that the University's "Policy and Procedures on Student Sexual and Gender-Based Misconduct and Other Forms of Interpersonal Violence ("Policy") deprived students of due process in violation of the Fourteenth Amendment." *Id.* at 1. In support of his motion for a TRO and preliminary injunction, the plaintiff argued that "due process require[d] that he be given a live hearing and the opportunity

for cross-examination of his accuser." *Id.* at 2. The plaintiff asked the court to enjoin the defendants from "1) withholding his official transcript and degree; 2) continuing their investigation, sanctions, and appeals process; and 3) continuing to use the Policy and requiring the Defendants to provide all students the protections set forth in the Statement of Student Rights and Responsibilities." *Id.* at 6-7. During a telephone conference with the court, the University's counsel "agreed to recommend to the University that it provide [the plaintiff] with a copy of his official transcript pending the conclusion of the investigation." *Id.* at 7. The court then held a hearing at which the court "ordered the University to stay publication of its Final Report pending [the court's] ruling" on the plaintiff's motion for a TRO. *Id.*

After the hearing, the court issued its decision, in which it found that the factors weighed in favor of an award of preliminary relief. *See id.* at 18. However, the court limited that relief "to [the plaintiff] and the ongoing investigation into his alleged conduct" even though the plaintiff had requested "campus-wide changes to the University's policies and procedures on sexual misconduct[.]" *Id.* Therefore, the court ordered that, "[a]s soon as practicable, the University . . . provide Plaintiff with the opportunity for a live hearing in accordance with the procedures set forth in the Statement of Student Rights and Responsibilities." *Id.* (citation omitted). However, the court stated that, "to the extent that the Statement [of Student Rights and Responsibilities] authorizes Plaintiff to question Claimant directly, the Court revokes that authorization. At the hearing, Plaintiff may engage only in circumscribed cross-examination, a process through which he may submit questions to the Resolution Officer ("RO"), Resolution Coordinator ("RC"), or Student Resolution Panel to be asked of Claimant." *Id.* & n.3 (stating that "[t]his procedure has been recommended for the claimant's wellbeing by the Department of Education's Office of Civil Rights"

-14-

(citing *Doe v. Univ. of Cincinnati*, 872 F.3d at 403)).

Plaintiff appears to rely on *University of Michigan* because, in that case, the court granted a preliminary injunction even though the University had not yet made any findings or imposed any sanctions against the plaintiff-student. *See* Knox-Nociolo Declaration at ¶ 19. However, Plaintiff fails to mention that, in *University of Michigan*, (1) the University's policy, unlike Defendant RPI's Policy, did not provide for a hearing and that, (2) even though a constitutional violation was at issue, the court ordered that, at the hearing, the plaintiff could engage **only** in circumscribed cross-examination, *i.e.*, submitting questions to the Panel to ask the claimant, rather than allowing the plaintiff to cross-examine the claimant directly. Thus, the preliminary injunctive relief that the plaintiff obtained in *University of Michigan* is the same relief that Plaintiff would receive under Defendant RPI's policy – a hearing and an opportunity to submit questions to the hearing panel prior to the hearing and during the hearing for the panel to ask the witnesses, including Plaintiff's accuser – **without** a preliminary injunction. In other words, the hearing that Plaintiff seeks to have the Court enjoin Defendant RPI from holding until the proposed Title IX regulations become effective is the very same relief that the court provided to the plaintiff in *University of Michigan* when it granted his motion for a preliminary injunction.

Although Plaintiff argues in a conclusory manner that Defendants have already violated his due process rights, he has not alleged, nor could he, that Defendant RPI has failed to follow the procedures set forth in its Policy regarding the investigation of claims under this Policy. Furthermore, to the extent that Plaintiff asserts that Defendants have not afforded him an opportunity to cross-examine witnesses, including his accuser, he **will** have the opportunity to do so at the hearing by submitting questions prior to and during the hearing to the Chair of the Hearing

Board for the Board to pose to those witnesses.

Finally, although Plaintiff argues that this circumscribed method of cross-examination does not satisfy due process, this argument is without merit. *See Yu*, 97 F. Supp. 3d at 465 (citations omitted). In *Yu*, the plaintiff made a similar argument, asserting that the hearing proceedings were unfair because he was required to question the witnesses through the Chair of the Panel, who, according to the plaintiff, "'refused to ask many of [his questions directed at Complainant and another witness] and allowed [Complainant] to be non-responsive with crying and non-responsive answers.'" *Id.* (quotation omitted). The plaintiff contended that, as a result of this process, his cross-examination of the witnesses was effectively denied. *See id.* The court disagreed, finding that "any claim of unfairness due to a requirement that questions be asked through the panel Chair fails as a matter of law" because "[c]ourts have found that similar policies and procedurally adequate." *Id.* (citations omitted).

Reviewing Plaintiff's arguments in light of the relevant case law, the Court concludes that Plaintiff has failed to demonstrate that he will suffer irreparable harm in the absence of an injunction. Plaintiff acknowledges that, to date, he has suffered no injury; and Defendant RPI has not sanctioned or disciplined him in any way. Furthermore, despite Plaintiff's claim to the contrary, there is no evidence that it is a foregone conclusion that the hearing will result in a finding that he violated Defendant RPI's policy or in the imposition of any sanctions against him. Therefore, any harm that Plaintiff asserts is remote or speculative and, most assuredly, not actual or imminent. *See Tom Doherty Assocs., Inc.*, 60 F.3d at 37.[5]

---

[5] Having found that Plaintiff has failed to establish irreparable harm, the Court does not need to address the other elements of the preliminary injunction standard.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for a preliminary injunction, *see* Dkt. No. 5, is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 11, 2019
       Syracuse, New York

                                          Frederick J. Scullin, Jr.
                                          Senior United States District Judge